Will the clerk please call the next case? 325-0056, the people of the state of Illinois, Appalee v. Marquand L. Ivy, Appellant. Counsel McCray, you may proceed. Good afternoon, your honors and counsel. May it please the court. My name is Natalie McCray, and I am an Assistant Appellate Defender with the Office of the State Appellate Defender, and I represent the Defendant on Appeal, Mr. Marquand I.V. Before this court, Mr. I.V. raises two issues. First, whether the trial court erred in permitting the child witness to testify via closed circuit television, and second, whether the trial court erred in admitting the child witness's statements regarding uncharged incidents made in the child-sensitive interview where she did not testify to those other acts at trial. For both issues, the defendant asks that this court reverse his convictions and remand his cause for further proceedings. Today, I would like to focus this court's attention on the first issue. However, I am happy to answer any questions that this court may have regarding the second issue. In my opening brief, I argued that the trial court erred in permitting the child witness to testify via closed circuit television on two counts. First, Section 106b-5 of the Child Victims of Sexual Abuse Statute is unconstitutional because it conflicts with the U.S. Supreme Court's ruling in Crawford v. Washington, and second, Subsection F-5 contains an unconstitutional legislative presumption that violates the Confrontation Clause because it does not require the trial court to make individualized findings. Today, I will be arguing these two points in the reverse order, focusing first on Subsection F-5. And as a reminder to this court, in this case, Mr. Ivey was charged with four counts of predatory sexual, criminal sexual and one count of aggravated criminal sexual assault. Prior to trial, the state filed a motion requesting that the child witness be permitted to testify via closed circuit television, and the state argued that under Subsection F-5 of the statute, there was a presumption that the child under the age of 13 will suffer severe emotional distress if she testifies in the courtroom, and for that reason, she should be allowed to testify via closed circuit television. The trial court granted the state's motion over the defendant's objection because the state indicated that the witness did not feel comfortable testifying in the courtroom and did not want to testify before the defendant. However, this presumption, in fact, violates the Confrontation Clause. Under Coy v. Iowa and Marilyn v. Craig, the trial court must make individualized findings that these particular witnesses needed special protection before limiting the defendant's confrontation rights. In Coy, the U.S. Supreme Court held that the Iowa statute providing that a party may be confined to an adjacent room or behind a screen or mirror that permits the party to view and hear the child's testimony, but does not permit the child to hear or see the party during their testimony, was unconstitutional despite the statute's legislatively imposed presumption of trauma, establishing the need for the child's special protection. In Pitts v. Mississippi, the U.S. Supreme Court also found that Mississippi's state statute providing that the child witness shall have the right to a properly constructed screen that would permit the jury and the judge in the courtroom to see the child but would obscure the child's view of the defendant was not constitutionally viable because the statute was mandatory and thus never required a case-specific finding of necessity. In the present case, the state here also relied on a legislatively imposed presumption of trauma in subsection f5 when arguing that the trial court should permit that the child witness be permitted to testify via closed circuit television at the trial. Like the statutes in Coy and Pitts, these presumption in subsection f5 circumvents the constitutional requirement that the trial court make individualized findings that the child witness require special protection by mandating that the child victim under the age of 13 shall testify outside of the courtroom and the testimony shall be shown via closed circuit television. Therefore, this court should find that this presumption in subsection f5 is unconstitutional and reverse Mr. Ivey's case for further proceedings. Turning to section 106b5 as a whole, while Craig found that protecting child victims constituted a limited circumstance where the abrogation of face-to-face confrontation was permitted, opinion in Crawford ultimately suggests like that in fact violates the Sixth Amendment. Prior to Craig, the U.S. Supreme Court in Ohio v. Roberts found that unconfronted hearsay was admissible if it, one, fell under a firmly rooted hearsay exception and two, bared a particularized guarantees of trustworthiness. Then the Craig court, primarily relying on Roberts, held that an accused's confrontation rights as to a child witness may be fulfilled even without face-to-face testimony if the testimony was reliable and there was an important public policy reason justifying the absence of the right to confrontation. However, in his dissent, Justice Scalia stated that no policy interest should overcome a defendant's right to face his accusers in court. In fact, he compared the majority's decision that face-to-face confrontation was not an essential element of the right to confrontation to the notion that being tried before the jury was not essential to the right to a jury trial. Later in the Crawford opinion, also authored by Scalia, it overruled Roberts, holding that such a malleable standard of reliability failed to protect against confrontation violations and stated that the courts lack the ability to replace the Constitution's prescribed procedure for determining the reliability of testimony in criminal trials or the crucible of cross-examination or, as Scalia stated in his dissent in Craig, face-to-face confrontation. Essentially, while Crawford did not mention Craig specifically, it did overrule Roberts, which Craig heavily relied on in its conclusion that child witnesses testifying via closed-circuit television didn't violate the Sixth Amendment. Therefore, in light of Crawford, section 106b5 as a whole is unconstitutional and this court should reverse and remand this case for further proceedings. Your Honors, ultimately Mr. Ivey's conviction should be reversed and his case remanded for further proceedings because section 106b5 of the statute is unconstitutional as it conflicts with Crawford, which determined that the text of the Sixth Amendment does not suggest any open-ended exception from the confrontation requirement to be developed by the courts. Moreover, the presumption in subsection f5 also violates the confrontation clause by circumventing the trial court's duty to make individualized findings that the child required special protection. Thank you. Any questions from the court? I have one, Madam Counsel. This has to do with the presumption prong of your argument. Yeah, I've read the the transcript of the motions and liminis where that issue was decided and the last thing the judge says is that I'm going to find that the state has met its burden. Doesn't that, at least in some manner, suggest it didn't rely on the presumption? So, actually, no. I would say that the court did in fact rely on the presumption. If you go back to the report of proceedings, page 230, while the court does state that in order for a child to testify outside of the presence of the jury, it must make some determination that the child would suffer serious emotional distress, the state then came in and said, judge, under f5 of that statute, it now creates a rebuttable presumption that she would say the severe emotional distress is because she's now 12. I think unless they can meet their burden to overcome that, she should be allowed to testify. The court again says right. Now, ultimately, the court did eventually state that testifying in front of the defendant would cause the child some emotional distress. However, not only is that insufficient under the statute itself, but it falls far outside what would have been or what was required under Coy and Craig. But it also concludes that the state has met its burden as opposed to saying the defense did not overcome the presumption. Correct. The court did in fact say that it was going to show that the state had met its burden, but because the court relied on the presumption, there was no burden for the state to overcome. I mean, it could either it ignored the presumption or found that it rebutted. Could either one of those be true? I'm sorry, can you repeat that question for me, please? Well, I mean, that bare statement that the state had met its burden without any reference to the presumption could mean that the state that the judge ignored the presumption. It could be an inarticulate way of doing that or an inarticulate way of finding that it was rebutted and the burden shifted back to the state and they met the burden. I mean, those are two ways you could look at that that would make us move on to the unconstitutionality as a whole. So, excuse me, Your Honor, just to clarify, are you asking me whether the court ignored the presumption and therefore under the remaining portion of the statute found that the child, excuse me. Yeah, and maybe I was unclear, but the pronouncement of the court was, I'm going to find that the state has met its burden of proof. It does not reference the presumption in that statement. I guess it leads us to guess whether it ignored the presumption or found that it was overcome. But I mean, that statement alone doesn't seem to have the court relying on the presumption in spite of its twice recognizing that the presumption exists as you accurately recited from page 230 and subsequent to the report of proceedings. Well, so even if the trial court did, for the sake of argument, ignore the presumption, it still only found that the child would have faced some emotional distress. However, the statute as a whole requires that the judge determines the testimony of a child victim will result in the child suffering serious emotional distress such that the child cannot reasonably communicate or that the child will suffer severe emotional distress such that the child suffers or would suffer severe adverse effects. I have no quarrel with that. I wasn't talking about the weight of the evidence, just what the judge was relying on. Thank you. Okay, thank you. But you're challenging this facially, not as applied. Yes, that is correct. Would it make a difference if you were challenging it as applied? I'm not. Can you possibly rephrase the question for me? No, no. Would it make a difference were you to challenge it as applied as opposed to facially? I mean, you had two choices here, right? Yes. Okay. Why did you choose one over the other? Because the presumption as a whole and the statute as a whole is unconstitutional, no matter who it's applied to. Under any circumstances, my argument is that no child should be permitted to testify via closed circuit television. You took a hard, more difficult choice, one might argue. It might be a more difficult choice, but unfortunately that is what my argument is, and that's what the law and what the U.S. Supreme Court's decision in Crawford suggests. Suggests, yes. Okay. Any other questions? Okay. Thank you. Thank you, counsel. You'll have time in reply. Okay. Thank you. Counsel Nicolosi, you may respond. Thank you. Good afternoon, your honors. May it please the court, counsel. My name is Justin Nicolosi. I represent the state of Illinois in this matter. The state submits that this court should find under issue one that the closed circuit television statute and the presumption in F-5 are both constitutional. Just like counsel, I will reserve my remarks to issue one, and if there are any questions on issue two, I'd be happy to answer those. Regarding the statute, the statute in subsection A, the statute on hold, the state submits that it is a constitutional statute. It does not offend the rights of defendants, confrontational clause rights. The tension between Craig and Crawford has been commented on by courts subsequent to the Crawford decision. As counsel acknowledged, and it's obviously as clear as day, Crawford does not mention Craig in any way, shape, or form. Craig stated that the confrontational clause is satisfied where the denial of that right is necessary to further important public policy and where the reliability of the testimony is otherwise assured. The Illinois Supreme Court has cited Craig favorably. That was in People v. Quadrato in 2005. It acknowledged that the preference is, of course, for face-to-face confrontation. There's no question about that, but it must occasionally give way to the considerations of public policy and the necessities of the particular case at hand. Subsequent cases in the appellate courts in Pope and Franklin commented on the, again, quote, tension between those decisions, but they both acknowledged that the Supreme Court has come out in Quadrato and has basically affirmed what Craig holds and acknowledges that Craig was not overturned. It wasn't even mentioned by Crawford. As I argued in my brief, and I shouldn't take credit for this as any kind of idea on my part, but the court in Franklin, the first district in 2023, kind of laid out why it believes that Craig was not mentioned in Crawford, especially when Justice Scalia had a prime role in both. He obviously had a lot of thoughts on confrontation clause but didn't choose to mention Craig when he wrote Crawford. The Franklin court observed that these were different areas of the confrontation clause and weren't, while they shared similarities on that front, factually they were not similar situations. That's why Craig wasn't mentioned according to the Franklin court. The state would agree with that. And again, despite these tensions that were acknowledged, Craig still remains to be good law. States continue to be able to pass laws that provide exceptions to the face-to-face preference when it's necessary to further important public policy. And of course, in this case, we're talking about aiding in the prosecution of sex crimes against children and aiding the search for truth and providing for an increased ability for a young person to testify as to what happened without having to face the accused individual face-to-face. That's, of course, an important public policy. And also, bypassing the face-to-face preference is important, is acceptable when the reliability of that testimony is otherwise assured. The statute in this case assures that ability regarding cross-examination and things like that. So, the state submits that based on the case law cited in my brief and the arguments that the statute as a whole is constitutional. Regarding the presumption aspect of this, I think counsel was talking about the first sentence of the presumption in 106B-5, subsection F5, which regarding that there's a rebuttable presumption that a child under 13 years of age, the testimony of that victim witness shall be shown on closed circuit television. But the next sentence is important as well. The next sentence is, quote, this presumption may be overcome if the defendant can prove by clear and convincing evidence that the child victim will not suffer severe emotional distress, period, end quote. That shows that this isn't just a broad brush generalized presumption that automatically advances a victim's testimony to closed circuit television. There is a finding that certainly opens up the door for the defendant to be able to argue that this victim will not suffer severe emotional distress and the other factors at play. How would that be achieved? I'm curious about that. Through a hearing? So, it would be a hearing, but through a hearing, correct? You have to request a hearing, right? Sure. This statute puts the ball in the defendant's court to, again, establish that the victim isn't deserving, I guess, for lack of a better phrase, isn't deserving of the presumption. That's the defendant who has no access whatsoever to the alleged victim and no ability to create evidence? Absent a hearing, I guess, of some kind? Sure, Your Honor, yeah. But even if we were talking about subsection A, and I would argue the judge kind of moved back and forth between subsection A and F5 in this case. And, you know, the prosecutor, as was discussed when Counsel McRae was speaking to Your Honors, that the prosecutor in this case was kind of trying to hammer the presumption, the presumption, the presumption, and the court didn't let him. I think the court was, at least in this case, certainly was trying to get the prosecutor to provide some information regarding what was happening with this individual victim, regarding that she didn't want to testify in court, but was comfortable in learning about if she could testify outside of the courtroom. I mean, did that kind of prime her pump to say, I'm uncomfortable, to say you have the option to do it by closed caption? Well, I don't know if that primed her. I know that she was more comfortable once she learned. Well, every witness would be more comfortable sitting in another room. Sure. But these witnesses are unique, Your Honor. I mean, these are child witnesses. The presumption only, according to the statute, is only applied to those under 13. I think it's pretty safe. All the child witnesses under 13 would be more comfortable, would they not? Of course. And I think that's where, Your Honor, I think that's where the presumption comes from. It's, I think it's okay to paint with a broad brush when we're talking about alleged victims of serious sexual crimes at the hands of adults. I mean, I think it's pretty safe to say that, yeah, almost all of them would face some sort of severe mental distress having to stand or sit in a courtroom with a lot of people around staring at the person who allegedly did some obviously horrific things to you. Well, I'm going to ask this question. Why is it sex crimes? What about someone 13 or under who has been a victim of a bullying battery? Your Honor, I think, I feel like it's probably, and I don't know about the committee. Are you saying they wouldn't suffer emotional, severe emotional distress, etc.? I'm sure they would, Your Honor, of course. But I think the intimate nature of a sexual act is a little different. I think that's where the legislature is separating. Well, I question that. We're talking about, what does it say? Severe emotional, what is the language there? Severe emotional distress, yes. That's referenced in subsection A and in F5, yes. Yeah. Well, we know children who are battered suffer severe emotional. Interestingly enough, we know that if it's a sex crime, let's say because the percentage are normally female, we have, even if you're 18, we have these crisis centers and we have counseling, and these are for adults. So I question why, even on the age basis, for that particular type of alleged crime, we have this specialized statute. I understand where you're coming from, Your Honor. I think with regard to specifically sitting in a courtroom and discussing these, what happened to you in front of a lot of strangers and being peppered with questions, and of course, looking at the person who allegedly did this very intimate, uncomfortable thing with you, I would argue it's different than being punched in the face. I understand they're both significant and nobody probably wants to look at the person who committed either act while you're sitting there talking about it and being questioned by people in suits and things like that. But I think there is a difference regarding a sex crime as opposed to just a physical battery. I don't know about the committee comment. Just the physical battery? Well, sure, yeah, there's different levels of batteries and things like that, but I think it's understandable to draw a line when we're talking about sex crimes. I mean, they're considered different than other types of non-sex crimes. Where that started and why that is, I can't pinpoint that. No, I'm just asking the question because we're not talking about, I mean, there's a public policy that we can punish one more severely than the other, but we're talking about fundamental constitutional rights here as to whether or not an accused actually committed either one. That's all I'm questioning. Sure, sure. I don't know anything else about statutes other than 115-10 regarding the sexual crimes at this point in time. I understand that every victim of a serious crime would have a certain degree of difficulty sitting in a courtroom and talking about it, but I think as regards to this statute and dealing with sex crimes alone, I think that it is an important policy to protect those types of victims and search for the truth and provide a manner in which these individuals can provide their testimony in a safer environment, but still be cross-examined and the things that the Constitution provides for defendants. I think that these statutes do provide such protection and ability to still provide the defendant the rights to confront their accuser in a certain way, shape, or form as these Supreme Court cases have permitted such exceptions. So, with that, if there are any other questions, I'd be happy to answer them, but did the state request that this court affirm the convictions and sentence and find that these statutes are constitutional? Any questions from the bench? Are there questions? I do not. No? No, thank you. Okay. Thank you, counsel. Counsel McCrae, you may reply. Your Honors, I have two points. First, regarding the state's argument regarding the statute as a whole. The state stated that Crawford doesn't mention Craig, and that is one of the reasons that it, Craig doesn't, or Crawford doesn't mean that children cannot testify via CCTV. However, while Crawford, and I mentioned this previously, while Crawford does not mention Craig, it does specifically overrule Roberts, which Craig did very specifically rely on. And so, it was unnecessary for Justice Scalia to have to write out every single case that relied upon Roberts to indicate that it's been undermined. Second, the issue here is, the issue here that Crawford really hounds on is the issue of reliability. So, I understand that protecting children, child victims is an important public policy interest. However, the issue here is the reliability of said testimony. And in Crawford, Excuse me, reliability of what? The reliability of the child's testimony. Okay. What do you mean by reliability? And what do you think the courts mean by the concept of reliability? So, under Crawford, when it comes to reliability, the Justice Scalia makes it clear that the way to test the reliability of testimony is through cross-examination. And in his dissent in Craig, he made it clear that he Well, you all use those terms. I'm asking, what do you think they mean by reliability? Whether the testimony can be trusted or not, or is enough to make a conviction on. Okay. We're familiar, I'm sure, with the concept of validity. Yes. And that, at least in research, validity is not the same as reliability. Reliability is you just get the same result consistently, but it doesn't mean it's valid. It's a philosophical distinction at its heart, but it's a very important one. And our courts, regardless whether it's Scalia, they're using the wrong terms. Sure, I will not disagree with that. However, I will say that if we were able to test the validity of every single testimony, then criminal trials would be much easier. However, we unfortunately can't. We are not polygraph machines. People aren't polygraph machines. And so the only way to test the reliability or the truthfulness of testimony as humans is to largely base it off of reliability. I mean, getting the same result consistently, that's really what—I mean, what about polygraphs? Do we consider them valid under all circumstances? Or do we not? The polygraph will be very reliable, but it doesn't go to whether or not it's truthful or valid. That is a very good philosophical point, but that doesn't change the fact that the U.S. Supreme Courts have stated that reliability is one of the mechanisms of—reliability is one of the mechanisms for testing testimony. Okay, excuse me one second. So my second point is just really quickly about the state's statement that the rebuttable nature of the presumption makes it constitutional. I would like to echo Judge Holdred's question where, like, how would that be achieved? The defense in this case, even at one point when trying to rebut the presumption, stated, I don't have the access to the victim as the state does. And so there really is no practical mechanism for the defense to gather the information necessary in order to rebut this presumption by clear and convincing evidence, which effectively makes the presumption mandatory, like in the case in Pitts. I see my time is up. May I briefly conclude? Oh, please conclude. Yes, sure. Ultimately, the subsection 106b-5 and the presumption in F-5 are unconstitutional as they violate the defendant's confrontation rights. And for the other reasons stated in my brief, this court should reverse the defendant's convictions and remand the case for further proceedings. Thank you. Questions from the court? Further questions? No, thank you. No? Okay. Just one quick last question. And I think that you got this at the very beginning with Justice Bertani's question. So your position is clear on the facial constitutionality. But what you're saying is, when I read the couple pages of the state's brief, that obviously the prosecutor apparently made it clear that she told the nurse she didn't want to talk about or deal with what happened, and that she was not willing to testify earlier. But apparently the thought that she may be able to do it in this way was the only reason, which could arguably make her unavailable. She said, I can't do it. And then they said, well, what if we did it this way? And then she says, yes. But your position is, even that is not enough under B-5. As far as specific findings, you're saying the trial judge didn't say enough to get there, notwithstanding the facial constitutionality issue. Correct. So because the court didn't make sufficient findings under the statute, and it didn't make sufficient individualized findings under Coy and Craig, because it based its decision solely on the proffered evidence from the state, that the child did not want to or did not feel like testifying in front of the judge, that would not have been sufficient under Coy or Craig. All right. Thank you. That's all that I have. Thank you. Thank you, counsel, both for your fine arguments. In this matter, this afternoon, it will be taken under advisement. A written disposition shall issue. And at this time, the clerk of our court will escort you from our remote courtroom. Have a nice afternoon. Thank you, you too. You too. Thank you. Folks.